IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HACKBELT 27 PARTNERS, LP.,       §
                                 §
        Plaintiff,               §
                                 §
v.                               §        Civil Action No. 3:14-CV-2258-N
                                 §
CITY OF COPPELL,                 §
                                 §
        Defendant.               §

## ORDER

This Order addresses motions made by both Plaintiff Hackbelt 27 Partners ("Hackbelt") and Defendant City of Coppell (the "City"). The Court grants the City's motion for summary judgment [16].[1]

The City inappropriately included new arguments and additional evidence in the Reply brief it filed to support its motion for summary judgment. Accordingly, the Court does not consider this information when deciding the City's motion for summary judgment. Even without the benefit of the arguments and evidence, however, the Court grants the City's motion for summary judgment because Hackbelt's claims fail as a matter of law and no material factual disputes exist between the parties.

---

[1]In view of the Court's ruling on the City's motion for summary judgment, the following motions are moot: the City's motion to clarify the scheduling order [57], its motion to disqualify Hackbelt's attorneys [67], and its motion in limine [78]; Hackbelt's motion to compel [50], its motion to strike [59], and its motion in limine [75].

# I. ORIGINS OF THE DISPUTE[2]

## A. The City Denies Hackbelt's Revised Zoning Application

Hackbelt bought 20.74 acres of undeveloped property (the "Property") within Coppell's city limits. The City had zoned the Property for "agricultural" use prior to Hackbelt's purchase. Hackbelt wanted to develop the land, so it entered into various contracts with developers and submitted a planned development zoning request to the City. Hackbelt hoped to construct a hotel, multifamily developments, and retail/office developments on three different lots within the Property.

Hackbelt presented its zoning request to the City's Planning and Zoning Commission. The staff of the Planning and Zoning Commission prepared a report recommending denial of Hackbelt's zoning request. The report's only stated reason for recommending denial was Hackbelt's application failed to meet the objectives of the City's Comprehensive Plan, which lists the City's zoning guidelines and requirements. In a subsequent deposition, Mr. Gary Sieb, who assisted with preparing the report, stated that in his opinion Hackbelt's plan failed to present the type of "mixed-use development" the City wanted because the retail and residential developments were not combined within the same buildings.

At the time Hackbelt submitted its zoning application, the City had no specific ordinances governing mixed-use developments. But not long after Hackbelt filed its zoning application, the City began the process of clarifying its position on the meaning of "mixed-

---

[2] Because the Court does not reach the extra evidence provided by the City in its Reply brief, the Court will not present that evidence in the factual background section of this Order.

use developments" by drafting and considering MXD-1 and MXD-2 zoning regulations. The City Manager acknowledged the new definition of "mixed-use developments" contained within these regulations did not accurately reflect what the Comprehensive Plan described as "mixed-use developments." He explained the City changed its definition because it no longer captured the City's vision of mixed-use developments, and the City wanted to clarify so potential developers would not file zoning applications without proper guidance.

Hackbelt appealed the Planning and Zoning Commission's decision to the Coppell City Council (the "Council"), arguing that its application met the requirements of the Comprehensive Plan. At Hackbelt's appeal, Council members opined Hackbelt's development contained elements of mixed use, but the Council wanted something a little different than what Hackbelt presented in its application. Accordingly, the Council provided Hackbelt with guidance and remanded Hackbelt's application back to the Planning and Zoning Commission.

Hackbelt submitted a revised zoning request to the Zoning and Planning Commission. The revised concept plan complied fully with the Comprehensive Plan requirements and incorporated the Council's comments regarding the mixed-use aspects of its development. Specifically, it designated space for retail and commercial developments on the first floor of its residential buildings.

Despite Hackbelt's revisions, the Zoning and Planning Commission again recommended denial of Hackbelt's application. Hackbelt appealed to the Council, and the Council again denied Hackbelt's application. Members of the Council said they rejected

Hackbelt's Revised Concept Plan and Zoning Request for a number of reasons, including the following: (1) the timing was wrong; (2) Hackbelt's plan did not present the best use for the property; and (3) the City could potentially attract a more desirable hotel. Ultimately, the Council concluded it wanted a mixed-use development, but Hackbelt's plan failed to present the kind of mixed use the Council envisioned for the City.

The City had not enacted the MXD-1 and MXD-2 ordinances when Hackbelt filed its zoning application. But the City staff analyzed Hackbelt's Zoning Request and Revised Concept Plan under a draft of the MXD-1 and MXD-2 ordinances. It was not until April 8, 2014 – the same day it denied Hackbelt's application – that the Council passed the ordinances. The City Manager admitted the timing of the passage of the MXD-1 and MXD-2 ordinances put Hackbelt into a predicament because the City would decide Hackbelt's request prior to adopting applicable zoning ordinances.

Because the Council denied the application, Hackbelt lost its development contracts, which resulted in $235,000 of termination fees. Furthermore, the City's denial caused Hackbelt to lose the value of those contracts: $5,506,548.

Since the denial of Hackbelt's zoning application, at least one third party has offered Hackbelt $5,420,604 to purchase the Property.

### B. The City Grants The Avenue at Denton Tap's Zoning Request

During the same meeting in which the Council denied Hackbelt's zoning application, the Council approved another mixed-use project, The Avenue at Denton Tap ("The Avenue"). The Avenue sought to change the zoning of its property from commercial to

planned development with mixed-use elements. The Avenue's mixed-use development included 8,575 square feet of office/retail uses and fewer than 30 multifamily units on 1.77 acres of property; it did not include a hotel. The Council approved the zoning change despite the fact that at least one member of the Council opined the property did not meet every aspect of the City's new mixed-use requirements.

Because Hackbelt believed the City's denial of its application violated its 14th Amendment substantive due process and equal protection rights, as well as its Texas constitutional right to be free of regulatory takings by the government, Hackbelt brought this action against the City. The City moved for summary judgment on all of Hackbelt's claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must accept the nonmoving party's evidence and draw all justifiable inferences in its favor. *Id.* at 255.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving

party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324.

### III. THE CITY HAS A RATIONAL BASIS FOR REJECTING HACKBELT'S ZONING APPLICATION

#### A. The Court Will Not Act as a Super Zoning Commission

A federal court should seldom inject itself into the "quasi-legislative" zoning decisions of municipalities. *Shelton v. City of Coll. Station*, 780 F.2d 475, 477 (5th Cir. 1986). When a property owner claims a municipality's zoning decision infringed upon its 14th Amendment substantive due process rights, a federal court will review the action to determine (1) whether the municipality's action deprived the owner of a constitutionally protected right and (2) whether the action was "arbitrary and capricious." *Id.* ("[O]ur review of these quasi-legislative decisions is confined to whether the decisions were 'arbitrary and capricious.'"); *Simi Inv. Co. v. Harris Cnty.*, Tex., 236 F.3d 240, 249 (5th Cir. 2000).

When substantive due process questions concern municipal zoning decisions, "arbitrary and capricious" does not carry the same meaning that it does under the Administrative Procedure Act. *Shelton*, 780 F.2d at 477. Instead, the Fifth Circuit held "any conceivable rational basis for the zoning decision" satisfies the arbitrary and capricious standard. *Id.* In other words, a federal court may interfere with a municipality's zoning decision only if the city "could have had no legitimate reason for its decision." *Id.* at 483.

The City's evidence justifies its decision to deny Hackbelt's revised zoning change. During the April 8, 2014 City Council meeting, some of the Council members informed Hackbelt they did not think it was "the right time" for the development. They also articulated their belief Hackbelt's development plan did not constitute the best use for the property. They stated the hotel Hackbelt planned to build was not ideal. Furthermore, Hackbelt's development did not meet the Council's vision of a mixed-use development.

While the timing of the revisions placed Hackbelt in a difficult situation, the City's decision to deny Hackbelt's revised zoning application was not arbitrary and capricious. The law does not require the City to approve any zoning change application it receives, even if that application meets all of the requirements of the Comprehensive Plan. There are numerous reasons why a city might choose to deny such an application. Denying the application so that the City could revise its mixed-use development requirements is a reason that satisfies the low arbitrary and capricious standard. Finally, this Court will not sit as a super zoning commission and second-guess the City's decision to deny Hackbelt's zoning application.

Because the City's reasons for denying Hackbelt's zoning application were not arbitrary and capricious, and because there is no material factual dispute between the parties, the Court grants summary judgment to the City on Hackbelt's substantive due process claims.[3]

------

[3]Because the City's actions were not arbitrary and capricious, the Court does not address whether Hackbelt has a constitutional right to change the zoning of its property from agricultural to planned development with mixed-use elements. Omitting this analysis is

### B. The City's Disparate Treatment of The Avenue Was Rational

The United States Supreme Court held the equal protection clause vindicates "claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012). But in the context of municipal zoning decisions, a claimant "bears the heavy burden of negativing any reasonably conceivable state of facts that could provide a rational basis for . . . differential treatment." *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) ("When social or economic legislation is at issue, the equal protection clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.") (citation omitted). The Fifth Circuit held "[t]here is no precise formula to determine whether an individual is similarly situated to comparators.*" Lindquist*, 669 F.3d at 233. "[T]he inquiry is case-specific and requires [a court] to consider "the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision." *Id.* at 234.

---

consistent with Fifth Circuit precedent. *See Shelton* 780 F.2d at 479 ("Because we conclude that the Zoning Board indisputably had available a rational basis for its zoning decision, we do not today undertake the task of defining the property right in question or deciding the related question of whether the state has deprived Shelton and Jones of any property.").

The two properties are not similarly situated. The Avenue's property is over ten times smaller than Hackbelt's property. Furthermore, The Avenue applied for fewer than 30 family residences, but Hackbelt's revised zoning application included 311 family residences. Even if The Avenue failed to incorporate the City's desired mixed-use elements, the fact that the entire property is not even 2 acres minimizes the negative effects of failing to include all of the City's required mixed-use elements. The retail, housing, and office space necessarily are very close together given the small size of the property. This is not true of a 20-acre property. On 20 acres, the retail, office space, and family housing could be too far away from each other to achieve the amount of mixing the City desired. Furthermore, The Avenue's zoning change application did not request permission to build a hotel. This difference between the zoning applications is significant.

Once again, the Court will not sit as a super zoning commission. Because Hackbelt's property is ten times larger than The Avenue's and because its application included a hotel, the City's decision to grant The Avenue's application and deny Hackbelt's application was rational. The Court concludes from these same facts that The Avenue was not a similarly situated comparator. Because the parties do not dispute the size of the properties or the existence of a proposed hotel in Hackbelt's application, there is no material fact at issue between them. Accordingly, Hackbelt's 14th Amendment equal protection claim fails as a matter of law and summary judgment for the City is appropriate.

Hackbelt's state law due process and equal protection claims mirror its federal law claims. Because the Court's analysis of these claims is the same as its analysis of the federal claims, the Court dismisses these claims also.

### IV. DENYING HACKBELT'S ZONING APPLICATION WAS NOT AN IMPERMISSIBLE REGULATORY TAKING UNDER TEXAS LAW

#### A. Texas Taking Law Is Unsettled

The Texas Supreme Court held a municipality violates the Texas Constitution and commits an impermissible regulatory taking if it passes regulations that fail to "substantially advance" a legitimate governmental interest. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998). In support of this holding, the Texas Supreme Court cited a U.S. Supreme Court decision: *Agins v. City of Tiburon*, 447 U.S. 255 (1980). *Mayhew*, 964 S.W.2d at 933. In *Agins* the U.S. Supreme Court utilized the "substantially advances" standard to analyze a taking claim. Since the Texas Supreme Court handed down *Mayhew*, however, the U.S. Supreme Court repudiated its use of the "substantially advances" standard. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 529 (2005) ("The 'substantially advances' formula is not a valid method of identifying compensable regulatory takings.").

The Texas Supreme Court has not had an opportunity to review its holding in *Mayhew* since the U.S. Supreme Court repudiated the "substantially advances" standard. *See, e.g.*, *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 478 (Tex. 2012) ("Although . . . the Supreme Court has changed its view of the *Agins* 'substantially advances' test . . . [under the facts of this case] we need not discuss this consideration."). Because the Texas Supreme Court has not had an opportunity to review *Mayhew*'s holding, as of now, the substantially

"advances standard" remains valid Texas law. Thus, there is a discrepancy between federal and Texas takings law. Because the Texas Supreme Court has generally assumed, without deciding, that the federal and Texas constitutions' takings clauses are coextensive, the Court believes Texas law is unsettled. *Mayhew*, 964 S.W.2d at 932 ("[W]e assume, without deciding, that the state and federal guarantees in respect to land-use constitutional claims are coextensive, and we will analyze the Mayhews' claims under the more familiar federal standards."). Because Hackbelt's state law taking claim fails even under the more exacting "substantially advances" standard, however, the Court need not resolve the unsettled nature of Texas law.

### B. The City Is Not an Insurer of the Profitable Use of Property

#### 1. Denying Hackbelt's Application Substantially Advanced the City's Legitimate Purpose of Promoting the General Welfare. – Under Texas law, governmental takings of property come in two varieties: physical and regulatory.[4] *Mayhew*, 964 S.W.2d at 933. As discussed above, the Texas Supreme Court held a municipality commits an impermissible regulatory taking if its zoning decisions fail to substantially advance a legitimate governmental interest. *Id.* A broad range of governmental purposes and regulations satisfy the state law standard. *Id.* at 934. For example, in *Mayhew* the Texas Supreme Court found justifications such as "protecting residents from the ill effects of urbanization" and "enhancing the quality of life" substantially advanced legitimate government interests. *Id.*

---

[4]The parties agree the City's action did not constitute a physical taking. Rather, Hackbelt alleges that the denial of its application constitutes a regulatory taking.

ORDER – PAGE 11

Before the U.S. Supreme Court repudiated the "substantially advances" standard, it held the Seventh and Fifth Amendments entitle a litigant to a jury trial when it is necessary to determine whether a municipality's decision to deny a zoning request was reasonably related to its proffered justifications for that decision. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 721 (1999) ("[T]he narrow question submitted to the jury was whether . . . the city's decision to reject a particular development plan bore a reasonable relationship to its proffered justifications. . . . [W]e hold that it was proper to submit this narrow, fact-bound question to the jury.").  The U.S. Supreme Court, however, did not "attempt a precise demarcation of the respective provinces of judge and jury in determining whether a zoning decision substantially advances legitimate governmental interests." *Id.* at 722.

Hackbelt contends, according to the United States Supreme Court's holding in *City of Monterey*, that the determination of whether the City's decision to deny Hackbelt's zoning application substantially advances a legitimate government purpose is a question for the jury, and not this Court.  The Court disagrees.  The U.S. Supreme Court in *City of Monterey* never indicated a court must empanel a jury every time a city denies a zoning application.  Instead, the U.S. Supreme Court held federal courts should empanel juries to determine whether a municipality's proffered reasons comport with its decisions to deny a zoning applications.

In the present case, the parties do not dispute that the City's proffered justifications reasonably relate to its decision to deny Hackbelt's application.  Hackbelt argues because its application comports with the City's Comprehensive Plan, the City's proffered reasons for

its denial – this is the wrong time to develop the Property, Hackbelt's hotel is not ideal, the application fails to meet the Council's new vision of a mixed-use development – are insufficient to justify its decision. But Hackbelt does not contend these justifications are unrelated to the City's stated purpose of promoting the general welfare, and any attempt to make such an argument would fail. Because the parties do not dispute that the City's proffered reasons reasonably relate to its decision, *City of Monterey* does not preclude summary judgment.

Accordingly, the Court to next considers whether the City's denial substantially advanced a legitimate governmental purpose. One of the City's reasons for denying Hackbelt's application, promoting the general welfare, is virtually identical to the "enhancing the quality of life" reason that the Texas Supreme Court approved in *Mayhew*. Thus, if the City's denial of Hackbelt's zoning request substantially advanced its stated purpose of promoting the general welfare, the denial substantially advanced a legitimate government purpose and meets the Texas standard.

The Court holds the denial substantially advanced the legitimate government purpose of promoting the general welfare. Hackbelt argues denying its application could not promote the general welfare because the application complied with the requirements of the City's Comprehensive Plan. The Court disagrees. There are numerous reasons why a zoning application could comport with the Comprehensive Plan but ultimately fail to promote the general welfare. The Council proffered some of those reasons: "this is not the right time;" "we've always been looking for that golden hotel to come or something, and I don't think

this is it." Having a Comprehensive Plan does not obligate the City to approve any and every application that complies with the Comprehensive Plan. The City retains discretion to deny zoning applications if it believes delaying the development of a property would substantially advance the legitimate governmental purpose of promoting the general welfare.

The Council believed its revisions to the Comprehensive Plan promoted the general welfare. Furthermore, the City believed applying its revised Comprehensive Plan to Hackbelt's 20-acre property promoted the general welfare. Finally, delaying Hackbelt's development of the property substantially advanced the general welfare because it gave Hackbelt time to incorporate the City's revisions regarding mixed-use developments into its application. Accordingly, the Court holds the City's decision to deny the application substantially advanced the general welfare.

*2. The City's Denial Did Not Unreasonably Interfere with Hackbelt's Right to Use and Enjoy Its Property*. – Even if a municipality's decision to deny a zoning change application substantially advances a legitimate state interest, this does not end the inquiry. A court evaluating a taking claim must also determine whether a governmental agency imposed "restrictions . . . [that] unreasonably interfere with landowners' rights to use and enjoy their property." *Mayhew*, 964 S.W.2d at 935.[5] Whether the government has unreasonably interfered with a landowner's right to use and enjoy property turns on the three

_____

[5]The U.S. Supreme Court and Texas Supreme Court have recognized another category of regulatory takings, known as called a "*Lucas* taking." A municipality commits a *Lucas* taking when it "den[ies] landowners . . . all economically viable use of their property." *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992); *Mayhew*, 964 S.W.2d at 935. Hackbelt does not claim the Property is valueless and does not assert a *Lucas* taking claim.

*Penn Central* factors: (1) "the economic impact of the regulation," (2) "the extent to which the regulation interferes with distinct investment-backed expectations," and (3) "the character of the governmental action."  *Mayhew*, 964 S.W.2d at 935; *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477–78 (Tex. 2012);  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978).

Under the first *Penn Central* factor, a court determines the economic impact of the regulation at issue by comparing "the value that has been taken from the property with the value that remains in the property." *Mayhew*, 964 S.W.2d at 935–36.  When analyzing this factor, usually a court should not consider the "[t]he loss of anticipated gains or potential future profits."  *Id.* at 936.  Thus, the anticipated gains Hackbelt hoped to reap from its speculative purchase of the property are irrelevant.  Instead, the Court considers the value of the property at the time of the purchase and the value of the property after the disputed governmental action.  While the parties did not present the Court with information about the amount Hackbelt paid for the property, the City presented the Court with evidence of a recent offer made to Hackbelt to purchase the Property for over five million dollars.  Even if the City had not presented any evidence of an offer, however, the fact remains Hackbelt purchased a property zoned for agricultural use and – even after the City's zoning decision – Hackbelt continues to own a property zoned for agricultural use.  Accordingly,  the economic impact of the regulation does not indicate the City's denial is an unconstitutional taking.

Under the second *Penn Central* factor, a court considers the investment-backed expectations of a landowner.  The Texas Supreme Court held "[t]he existing and permitted

ORDER – PAGE 15

uses of the property constitute the 'primary expectation' of the landowner that is affected by regulation." *Id.* The Texas Supreme Court instructed courts to consider the parties' "[k]nowledge of existing zoning" at the time of a property's purchase when "determining whether the regulation interferes with investment-backed expectations." *Id.* Denying Hackbelt's zoning request did not unreasonably interfere with Hackbelt's distinct investment-backed expectations because the City had zoned the Property for agricultural use prior to Hackbelt's purchase. Hackbelt bought a property zoned for agricultural use, hoping the City would change the zoning when Hackbelt presented its development plan. Hackbelt cannot hold the City responsible for Hackbelt's disappointment. Hackbelt argues the City designated the Property as a mixed-used development center in its Comprehensive Plan, so the City's denial of its zoning application injures its investment-backed expectations. This arguments fails, however, because Hackbelt provided the Court with no evidence, and has not even argued, that the City has forbidden Hackbelt from using the Property according to the current zoning: agriculture.

Under the final factor *Penn Central* factor, a court should look to the character of the governmental action to determine if it is a taking. *Hearts Bluff*, 381 S.W.3d at 477–78. For example, the U.S. Supreme Court, when discussing this factor, said, "government actions that may be characterized as acquisitions of resources to permit or facilitate uniquely public functions have often been held to constitute 'takings.'" *Penn Cent.*, 438 U.S. at 128. Hackbelt's claim fails under the final factor because Hackbelt failed to characterize the City's denial as a taking. The City has merely denied Hackbelt's application to change the zoning

ORDER – PAGE 16

of the Property. Hackbelt can submit another application in accordance with the City's revised mixed-use property development guidelines. If Hackbelt no longer wishes to develop the Property, Hackbelt can sell it. Finally, Hackbelt can put the Property to agricultural uses. The City's denial of the proposed zoning change is not an acquisition of resources to permit public functions.

Because Hackbelt's claim fails under all three parts of the *Penn Central* test, the City's decision to deny Hackbelt's zoning request does not unreasonably interfere with Hackbelt's right to use and enjoy the Property, and the Court grants summary judgment to the City on Hackbelt's state law taking claim.

CONCLUSION

The Court grants the City's motion for summary judgment and denies the parties' other motions as moot. Hackbelt purchased a property zoned for agricultural use, speculating it could change the zoning and develop the property. The City denied Hackbelt's application for a zoning change to planned development with mixed-use elements because Hackbelt's application did not comport with the City's vision of a mixed-use development. This reason is not arbitrary and capricious. It substantially advances the legitimate purpose of promoting the general welfare. Finally, the City's denial did not unreasonably interfere with Hackbelt's right to use and enjoy its property. Because there are no material factual disputes between the parties, the Court grants summary judgment to the City on all of Hackbelt's claims.

Signed October 6, 2015.

_____
David C. Godbey
United States District Judge